UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                     :

DAVID LESSOFF,                           :

                                Plaintiff,    :

                                                     :          11 Civ. 09649 (LGS)

          -against-            :

                                                       :          OPINION AND ORDER

METRO-NORTH COMMUTER RAILROAD,   :

                                  Defendant.  :

                                                     :

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/10/14_

LORNA G. SCHOFIELD, District Judge:

      This case is now before the Court on Plaintiff's Motion for a New Trial Pursuant to Rule 59 of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion is denied.

**<u>BACKGROUND</u>**

      In December 2011, Plaintiff David Lessoff brought this suit against his employer, Defendant Metro-North Commuter Railroad ("Metro-North"), for injuries that Plaintiff sustained in the course of his employment as a train conductor.  Plaintiff sought judgment and damages under the Federal Employers Liability Act ("FELA").  On September 26, 2013, after a four-day trial, the jury returned a verdict for Defendant, finding that Metro-North was not negligent.  On October 23, 2013, the Court entered judgment dismissing the action.

      On November 9, 2013, Plaintiff filed the instant motion, arguing that the Court committed seven errors that in substance pertain to four issues: (i) evidence, argument and a jury instruction concerning assumption of risk; (ii) Plaintiff's unrelated shoulder injury; (iii) Court-imposed limits on the parties' use of time during trial; and (iv) the permissibility of Defendant's use of peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79 (1986).

Specific facts relevant to this motion are set forth as necessary in the discussion of each issue below.

## STANDARD

Rule 59 of the Federal Rules of Civil Procedure provides in relevant part that "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party – . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). "A motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 146 (2d Cir. 2012) (alteration in original) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)) (internal quotation marks omitted), *cert. denied*, 133 S. Ct. 1724 (2013). An order for a new trial may be grounded on findings, inter alia, "that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Santa Maria v. Metro-N. Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)); *see also* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2805 (3d ed. 1998) (noting the broad terms in which Rule 59(a) is stated and observing that courts have ordered new trials for "[a]ny error of law" or findings "that the verdict is against the weight of the evidence, that the verdict is too large or too small, that there is newly discovered evidence, that conduct of counsel or of the court has tainted the verdict, . . . that there has been misconduct affecting the jury," or "that the verdict was based on false testimony"). A motion for a new trial may also "raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co.*, 311 U.S. at 251.

Rule 59(a) motions are "committed to the sound discretion of the district court . . . ." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple[.]" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp.*, 156 F.3d at 144) (internal quotation marks omitted), *cert. denied*, 133 S. Ct. 1805 (2013). Moreover, pursuant to Rule 61 of the Federal Rules of Civil Procedure, "[u]nless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial" – i.e., "it is only those errors that have caused substantial harm to the losing party that justify a new trial." 11 Wright & Miller, *supra*, § 2805.

## DISCUSSION

At the outset, the Court notes that all of the issues raised by Plaintiff on this motion are ones that the Court had considered before or during trial. To the extent Plaintiff seeks to relitigate those issues, the motion is denied as improper under Rule 59. *Analytical Surveys, Inc.*, 684 F.3d at 52. Nevertheless, the Court considers and rejects each of Plaintiff's arguments on the merits.

### I.    Assumption of Risk

Plaintiff argues that the Court erred in allowing defense counsel to cross-examine Plaintiff on his assumption of the risks of his employment by Defendant, a defense disallowed under FELA. Plaintiff also argues that the Court erred in allowing defense counsel to argue the assumption of risk defense during summation. Plaintiff contends that the Court's instruction to the jury regarding assumption of risk did not cure those errors but further confused the jury. These arguments are incorrect.

First, as the Court noted during the trial, Plaintiff's testimony during cross-examination to which Plaintiff's counsel objected was admissible as evidence of contributory negligence.[1] Assumption of risk – unavailing as a defense under FELA, 45 U.S.C. § 54 – is "'the knowledgeable acceptance by an employee of a dangerous condition when and if such acceptance was necessary for the performance of his duties.'" *Ammar v. United States*, 342 F.3d 133, 139 (2d Cir. 2003) (quoting *Rivera v. Farrell Lines, Inc.*, 474 F.2d 255, 257 (2d Cir. 1973)). Contributory negligence, on the other hand, "'connotes some careless act or omission on the part of the employee over and above [mere] knowledgeable acceptance' of a risk," *id.* (alteration in original) (quoting *Rivera*, 474 F.2d at 257), and is a permissible defense in FELA cases to reduce the amount of damages to which a plaintiff would otherwise be entitled.  45 U.S.C. § 53.

The questions to which Plaintiff's counsel objected, and the corresponding responses from Plaintiff, could be construed by reasonable jurors as evidence of contributory negligence. The exchange was as follows:

> [Defense counsel]: Now, knowing [the alleged unsafe conditions], didn't you think it was prudent to just sit down before taking off your belt while you were going through CP 5 area?  . . .
>
> [Plaintiff]: I didn't really – it's not something that – you don't think about every moment of every second what you're doing. . . . At that moment I wasn't exactly 100 percent certain where I was.  I wasn't paying full[] attention; you don't pay attention to every second of every moment you're out there.
>
> [Defense counsel]: Well, knowing what you knew back then, in the manner that you testified here, don't you think it would have been prudent for you to brace yourself by holding on or leaning somewhere while you were within the CP 5 area doing whatever it was that you were doing at the time that the incident occurred? . . .

---

[1] Plaintiff's briefs do not quote, cite or otherwise refer to specific portions of the trial transcript. The Court will assume that Plaintiff's argument here is limited to those parts of the questioning to which Plaintiff's counsel objected.

> [Plaintiff]: Conductors can't always hold on to every part of a train at every second when they are moving through it.  It's not possible to do your job that way.  You have to be able to balance and move, collect fares and move about.

This testimony followed defense counsel's earlier cross-examination of Plaintiff about certain safety rules that Plaintiff was required to follow as Defendant's employee.  At one point, Plaintiff acknowledged that he was required to know and was routinely tested on the rules governing crew conduct, and that he did not report the engineer's alleged rough train handling to a supervisor as required by one of those rules.  At another point, Plaintiff acknowledged that he also was required to be familiar with a rule requiring him to "[e]xpect and protect against the movement of trains, engines, track cars, or other equipment at any time on any track from either direction," and another rule requiring him to "[b]e alert[,] attentive and aware at all times when on duty."  Especially in the context of this testimony, the cross-examination at issue reasonably can be viewed as evidence of Plaintiff's failure to abide by safety rules, over and above the knowing acceptance of the risks that those rules were designed to address.  As such, the objected-to questioning was properly permitted to show contributory negligence.  *See E. Hampton Dewitt Corp. v. State Farm Mut. Auto. Ins. Co.*, 490 F.2d 1234, 1242 n.4 (2d Cir. 1973) (holding that the violation of a statute or regulation by the plaintiff may be considered as evidence of contributory negligence); *Renaldi v. N.Y., New Haven & Hartford R.R. Co.*, 230 F.2d 841, 844 (2d Cir. 1956) (holding that a railroad company's safety rules "are admissible when their purpose is to protect the class of persons by whom suit is brought and when their violation can reasonably be said to contribute to the injury sued upon"); *see also Fashauer v. N.J. Transit Rail Operations, Inc.*, 57 F.3d 1269, 1280 (3d Cir. 1995) ("Examples of evidence of contributory negligence include failing to follow specific safety instructions reasonably calculated to protect the employee from the injury that occurred; failing to report a defect when the evidence

establishes that such reporting would be productive; and failing to act prudently in performing the task.").

Plaintiff also challenges the part of defense counsel's closing argument that concerned contributory negligence:

> [Plaintiff] said ["]at the moment I wasn't exactly one hundred percent certain where I was.  I wasn't paying full[] attention.  You don't pay attention to every second of every moment you're out there.["]   He testified he wasn't paying attention.  There are safety rules. . . . And they're common sense basically.  Be alert at all times.  He's required to be alert at all times.  It's one of the major safety rules.  And it's a common sense rule.  You know, you're on a train.  You know the train moves just like any moving vehicle.  You brace yourself and be alert especially. . . . And another one.  Expect movement of the train at any time.  There wasn't anything extraordinary here.  No new risks.  This was a reasonable day, reasonable operation, reasonable train.  And he was not asked to do anything different that day other than what he had been doing every[ ]day, perform[] his job in a reasonably safe manner.  That was his duty also.  And he did not.  He admitted that he did not.

Defense counsel did not argue that Plaintiff's mere awareness of the alleged unsafe conditions barred him from recovery; rather, he argued that Plaintiff's negligent failure to follow Defendant's rules was a contributing, if not sole, cause of his injury.  Thus, counsel's argument was permissible.

To the extent that the jurors could have taken defense counsel's cross-examination and summation to be about assumption of risk, jury instructions adequately addressed that concern.  In its final instructions to the jury, the Court granted Plaintiff's application to charge the jury on assumption of risk and gave exactly the charge that Plaintiff had proposed: "[Y]ou cannot find the plaintiff guilty of contributory negligence because he assumed the risk of working in this particular area.  Assumption of risk is not a defense to this action."  The Court decided to do so after specifically finding that "it's at least possible, and even likely, that without an instruction on assumption of risk the jurors could be confused about contributory negligence."

Plaintiff argues that the Court's instruction led to jury confusion because it "clearly did not adequately explain the subject matter in the context of this case nor adequately impress upon the jury the fact that consideration of assumption of risk was prohibited by statute . . . ." However, the Court adopted verbatim Plaintiff's proposed jury instruction on assumption of risk. To the extent that Plaintiff's counsel believed a different or more detailed instruction was needed, he did not take any of several opportunities to amend his submission, including (i) at the charging conference after the third day of trial, (ii) in the five-page letter that Plaintiff's counsel filed after the charging conference, and (iii) before the fourth day of trial when the Court explained its decision to include the assumption of risk charge proposed by Plaintiff.  Rather, throughout the trial, Plaintiff's counsel merely repeated his generic application that an assumption of risk charge was necessary.  As Plaintiff failed to make a timely objection to the assumption of risk charge that he himself had proposed, the Court considers Plaintiff's instant challenge to have been waived.  Fed. R. Civ. P. 51(c)(2).  Although the Court "may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights," Fed. R. Civ. P. 51(d)(2), the Court does not find its charge to have been a plain error, nor does it find that any such error could have affected substantial rights.

In his attempt to show jury confusion, Plaintiff states that after the trial, Plaintiff's counsel "had occasion to" speak to two jurors, one of whom said that the jurors "believed that [Plaintiff] knew the risk of what he was doing at the time when he was putting away his equipment" and the other of whom similarly said that the jurors "believed that [P]laintiff knew what to expect."  Plaintiff adduced these statements as "explicit proof" that the jury had found, contrary to law, that Plaintiff had assumed the risks of any negligence on the part of Defendant. Plaintiff, however, offers no evidence to support these assertions.  "Absent evidence to the contrary, [courts] must presume that juries understand and abide by a district court's limiting

instructions." *United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (citing *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993)).  In the absence of any actual evidence of jury confusion here, the Court presumes that the jurors abided by its instruction not to consider whether Plaintiff assumed the risks of working as a train conductor.

In any event, any confusion that defense counsel's cross-examination and argument and the Court's instruction could have caused was harmless, because the jury did not make any findings as to Plaintiff's assumption of risk or, for that matter, his contributory negligence.  The only finding that the jury made was that Defendant was not negligent.  Given that finding, any argument regarding Plaintiff's assumption of risk is moot.

In light of the foregoing, the Court does not find that Plaintiff was subject to an unfair trial on account of the cross-examination, closing argument or curative instruction regarding assumption of risk.

## II.    Plaintiff's Shoulder Injury

Plaintiff next argues that the inadvertent revelation of Plaintiff's unrelated shoulder injury and surgery "seriously impugned" Plaintiff's credibility such that the jury "resolved all matters of credibility against [P]laintiff," depriving him of a fair trial.  The Court disagrees.

Plaintiff refers to an exchange during defense counsel's direct examination of its expert witness, Dr. George Unis, in which he was asked about his impression of Plaintiff's condition:

> [Defense counsel]: Doctor, . . . from your review of the records and your examination of [Plaintiff], do you have an opinion with a reasonable degree of medical certainty as to whether [Plaintiff] will require further treatment from the injuries he sustained in this incident of June 23, 2009?
>
> [Plaintiff's counsel]:   Objection.
>
> The Court: Just hang on.  Is this in the report?
>
> [Plaintiff's counsel]: No.

[Defense counsel]: The report does . . . opine on the future.

The Court:     Doctor, if I might.  Did you provide a written opinion to counsel for purposes of this lawsuit?

[Dr. Unis]: Yes.

The Court: And was . . . your impression . . . in the opinion that he may return to his regular job as a conductor *when his shoulder issues resolve*?

[Dr. Unis]: Yes.

The Court: Thank you.

[Plaintiff's counsel]: That's not even in this case.  We weren't discussing that, [Y]our Honor.

The Court: That's the only reference to the future and now it's in the record. . . .

[Defense counsel]: . . . [W]hat else consisted of your impression of [Plaintiff]? . . .

The Court: Did you have another impression?

[Dr. Unis]: My impression was that [Plaintiff] had a back injury, that it had resolved.  And *as soon as he recovered from his shoulder surgery* –

The Court: . . . Can we not talk about that?  That has nothing to do with today's case and you should not consider it.

(Emphasis added).  In response to Plaintiff's counsel's request during a sidebar, the Court gave the following instruction shortly thereafter:

Let me just give a curative instruction here.  A curative instruction often means something happened that wasn't appropriate for the jury to hear.  It was my fault. I apologize.  There was testimony about the shoulder and it came because I was reading from something.  What you should understand is that the shoulder issues have nothing to do with the case.  I know I said that before.  You should disregard that.  You should not consider that in any way in your deliberations about the back issues.

The two inadvertent references at most revealed that Plaintiff had a shoulder surgery from which

he was recovering at the time he was examined by Dr. Unis.  From that fact alone, it is unclear

how the jurors could have reasonably inferred – as Plaintiff argues – that "[P]laintiff was hiding

[something] from them" or that he was "being less than honest with them," especially given that Plaintiff was never questioned about his shoulder injury, whether on direct or on cross-examination.  Moreover, any inferences that the jurors could have reasonably drawn were foreclosed by the Court, which took sole responsibility for the error and clearly instructed the jurors that the shoulder surgery had "nothing to do with the case" and should not be considered "in any way."  There is no evidence to suggest that the jury disregarded or otherwise disobeyed the curative instruction.  *See Marshall v. Randall*, 719 F.3d 113, 120 (2d Cir. 2013) (presuming, in the absence of evidence to the contrary, that jurors heeded the district court's curative instruction (citing *Downing*, 297 F.3d at 59)).  The Court thus finds that the revelations were not prejudicial, and that if they were, any such prejudice was adequately addressed by the Court's curative charge.  *Cf. United States v. Lewis*, 111 F. App'x 52, 56 (2d Cir. 2004) (holding that "any prejudice caused by" an inadvertent revelation of the criminal defendant's prior arrest could have "easily been addressed through a proper curative instruction").[2]

### III.   Time Limits

Plaintiff next argues that the Court's imposition of time limits was prejudicial.  Plaintiff's counsel states that "[a]t no time did the Court ever explain how it arrived" at the time limits – five-and-a-half hours each for opening statements and witness examination, and 30 minutes each for summations – and that the Court failed to consider "actual circumstances that develop[ed]"

---

[2] Plaintiff's counsel makes references to revelations concerning whether Plaintiff received workers' compensation benefits.  Contrary to Plaintiff's characterizations in his opening brief, these revelations did not come from the testimony of Dr. Unis, but from that of Plaintiff's own treating physician, Dr. Michael Elia.  Dr. Elia made two fleeting references to "compensation," both of which appeared inadvertent, and after the second incident, the Court issued a curative instruction that Plaintiff's counsel requested and did not object to.  To the extent that Plaintiff now argues that Dr. Elia's testimony was prejudicial and that the instruction failed to cure that prejudice, the Court similarly finds that Plaintiff waived the issue and that in any case any prejudice caused by the revelations concerning workers' compensation benefits was adequately remedied by the Court's curative instruction.

by holding the parties to those limits throughout the trial.  As a preliminary matter, contrary to

Plaintiff's representations, the Court did both of those things.  At the July 11, 2013, pretrial

conference, the Court asked the parties to discuss all of their planned witnesses, after which the

following exchange took place:

> The Court: . . . So that takes us through the witnesses.  And that[,] I think[,] means that we can discuss how long the trial should take.  And what I am going to propose to you is – I'm going to propose to you, because witnesses in my experience always take less time than counsel think they will, four-and-a-half hours total for both sides.  That would include your opening, your direct and your cross, basically any time you're on your feet with your mouth open talking about your side of the case.  And then I give you, in addition to that, a 20-minute summation.
>
> [Plaintiff's counsel]: I think that's a little short.
>
> The Court: Which part?
>
> [Plaintiff's counsel]: The four-and-a-half hours for all my witnesses.
>
> The Court: Well[,] "all your witnesses" is . . . four.
>
> [Plaintiff's counsel]: The doctor will probably [be] closer to two hours on direct.  My client will probably be at least half a day.  The [P]laintiff has a lot to go through.  He has to go through the occurrence and his injuries.
>
> The Court: So what I'll do is I will make it – let's make it five-and-a-half hours each side.
>
> [Plaintiff's counsel]: That's going to be tight.  I'll do my best.
>
> The Court: . . . [Y]ou're a skilled advocate.
>
> [Plaintiff's counsel]: I'll do my best but I may be pushing it.
>
> The Court: So five-and-a-half hours.  And that is your opening, your direct and your cross.  And then independent of that you get a 20-minute summation.  And that's same for each side.  And I or my deputy will keep the clock.
>
> [Plaintiff's counsel]: That's my introduction, 20 minutes.  Could we make that a 45-minute summation?  I don't know that I'll –
>
> The Court: You really think 45 –

> [Plaintiff's counsel]: I don't know that I'll be that long in this case.
>
> The Court: Let's compromise and make it 30 minutes.  The jury doesn't want to listen to you – not you personally but anybody more than 30 minutes.  So let's make it 30 minutes for the summation.

As the foregoing exchange between the Court and Plaintiff's counsel shows, not only did the Court make its reasoning plain, but Plaintiff's counsel in fact actively participated in its decision-making.  Based on Plaintiff's counsel's input, the Court allotted each side five-and-a-half hours for the opening and questioning, plus a half-hour for summation.  Similarly, when Plaintiff's counsel renewed his application for more time after the second day of the trial, the following exchange took place:

> [Plaintiff's counsel]: Again, I have to renew my application for more time, Judge, given the substantive testimony that I have to elicit through a treating doctor and my client regarding the occurrence.
>
> The Court: You just may need to be – I told you at the beginning, and we've been giving you the amount of time at every juncture that we can.  And we don't – you know, we didn't need to spend 40 minutes on where the chairs are.  So that's your judgment.
>
> [Plaintiff's counsel]: I don't think we spent 40 minutes on where the chairs are, Judge.  I think we might have spent five to ten minutes.
>
> The Court: I am sorry to tell you but I know you mentioned yesterday that there was an occasion where you thought you had talked five to ten [minutes] and it had been an hour-and-a-half.  You did not spend an hour-and-a-half on the chairs but you probably spent 40 [minutes].  So in any event you can make your judgment how you want to spend your time but I'm not giving you more time.  You've had plenty of warning and I'm holding you both to your time.

As is apparent from the exchange, the Court made its determination to keep the limit at five-and-a-half hours after having specifically considered the way in which Plaintiff's counsel had used its allotted time through the second day of trial.

District courts in this Circuit have frequently observed that "there is a long line of cases making clear the authority of district judges to impose reasonable time limitations on trials."

*Lidle v. Cirrus Design Corp.*, 278 F.R.D. 325, 331 (S.D.N.Y. 2011) (internal quotation marks

omitted), *aff'd*, 505 F. App'x 72 (2d Cir. 2012); *accord Friedline v. N.Y.C. Dep't of Educ.*, No.

06 Civ. 1836, 2009 WL 37828, at *2 (S.D.N.Y. Jan. 5, 2009), *aff'd sub nom. Cruz v. N.Y.C.

Dep't of Educ.*, 376 F. App'x 82, 84 (2d Cir. 2010); *Latino Officers Ass'n, Inc. v. City of New

York*, No. 99 Civ. 9568, 2003 WL 22300158, at *2 (S.D.N.Y. Oct. 8, 2003) (collecting cases

from other circuit courts).  "Moreover, in order to prevail on a claim that a time limit was too

short, a party must have come forward with an offer of proof showing how its presentation

would be curtailed by it and must demonstrate prejudice."  *Evans v. Port Auth. of N.Y. & N.J.*,

246 F. Supp. 2d 343, 351 (S.D.N.Y. 2003) (collecting cases).  Here, Plaintiff's counsel

represents that he was "intimidated and coerced" into shortening his examination of the

witnesses, but does not describe in any specific detail how those examinations were prejudicially

curtailed.  With respect to the summation, Plaintiff's counsel represents that he

> had to eliminate from his summation the routine discussions he would ordinarily
> have given regarding the liberal remedial spirit of the FELA, the low standards of
> proof required of the FELA plaintiff, MNCR's non-delegable duty to provide
> [Plaintiff] with a safe workplace, an explanation of what is meant by the
> negligence to the slightest degree – the FELA's special standard of causation, or
> as circumstances developed in this case, a[] fully detailed discussion of the
> assumption of risk defense . . . .

These are all matters of law which are the exclusive province of the court.  It is neither necessary

nor proper for counsel to instruct the jury on the law in their summations or any other time.  *See

United States v. Marchese*, 438 F.2d 452, 455 (2d Cir. 1971) (affirming the district court's

instruction to the jury that "sometimes lawyers tried to tell the jury what the law was, that this

was the function of the court, that the jury was bound to accept the judge's instructions on the

law"); *see also Crispino v. Allard*, 378 F. Supp. 2d 393, 410 (S.D.N.Y. 2005) (in a petition for

writ of habeas corpus, affirming the trial court's decision to sustain the prosecutor's objection to

the pro se plaintiff's characterization of the burden of proof during his summation, on the ground

that the pro se plaintiff had "invaded the court's province by instructing the jury on the law"). Indeed, the Court instructed the jury on the law before summations precisely so that the lawyers would not be tempted, in order to make their arguments comprehensible, to usurp the Court's exclusive role of explaining the law.

For all these reasons, Plaintiff has failed to make a showing that the time limits were prejudicial.

## IV.    Jury Selection

Finally, Plaintiff argues that Defendant's exercise of its peremptory challenges – all three against black women – constituted racial discrimination in violation of the Equal Protection Clause pursuant to *Batson*.  The Court again disagrees.

*Batson* establishes a three-step analytical framework.  First, the party challenging the peremptory strikes must "make a prima facie case that the nonmoving party's peremptory is based on race."  *McKinney v. Artuz*, 326 F.3d 87, 97 (2d Cir. 2003) (citing *Batson*, 476 U.S. at 96-97).  Then, "the nonmoving party must assert a race-neutral reason for the peremptory challenge," *id.* at 97 (citing *Batson*, 476 U.S. at 97-98), although the burden upon the nonmoving party here is "very low," *id.* at 98.  "Finally, the court must determine whether the moving party carried the burden of showing by a preponderance of the evidence that the peremptory challenge at issue was based on race."  *Id.* (citing *Batson*, 476 U.S. at 96, 98).

Here, assuming that Plaintiff made a prima facie case, the Court asked defense counsel to explain the reasons for his three peremptory strikes, which he did: one individual suffered from an injury similar to that of Plaintiff; a second individual was married to someone whose job is similar to that of Plaintiff or one of the witnesses; and the third individual was unemployed and, like Plaintiff, a cancer survivor.  The Court found the proffered reasons to be race-neutral.  The critical question, then, was the third step in the *Batson* framework – i.e., "whether counsel's race-

neutral explanation for a peremptory challenge should be believed."  *Id.* (internal quotation marks omitted).  "Because the evidence on this issue is often vague or ambiguous, the best evidence often will be the demeanor of the attorney who exercises the challenge."  *Id.* (internal quotation marks omitted); *see also Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010) (noting that peremptory challenges – and therefore *Batson* determinations – are often based on "'subtle, intangible impressions'" (quoting *McCrory v. Henderson*, 82 F.3d 1243, 1248 (2d Cir. 1996)). Based on the Court's observations of the jurors and defense counsel, the Court found the proffered race-neutral reasons to be reasonable and credible.  After hearing Plaintiff's counsel's arguments, the Court determined that Plaintiff did not meet his burden of showing that Defendant exercised its peremptory challenges based on race.  The Court stands by that determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED in its entirety.

SO ORDERED.

Dated: April 10, 2014
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE